### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| *DEVON A. G.,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 1:20-cv-00005-NT* |
| | ) | |
| *ANDREW M. SAUL,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Child's Disability Benefits (CDB), Social Security Disability (SSD), and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found that, if the plaintiff ceased substance use, he was capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in determining his mental residual functional capacity (RFC) in the absence of substance use and in rejecting the opinion of treating nurse practitioner Emil Bukher, PMH-NP. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 4-13. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had not attained the age of 22 as of February 4, 2017, his alleged onset date of disability, Finding 1, Record at 24;[2] that he met the insured status requirements of the Social Security Act through September 30, 2018, Finding 2, *id*.; that he had the severe impairments of schizophrenia, generalized anxiety disorder, alcohol use disorder, and cannabis use disorder, Finding 4, *id*.; that, based on all of his impairments, including substance use disorders, he had the RFC to perform a full range of work at all exertional levels but was limited to the performance of simple tasks, could not interact with the public, and would be absent from work two days per month, Finding 6, *id*. at 26; that, considering his age (20 years old, defined as a younger individual, on his alleged disability onset date, February 4, 2017), education (at least high school), work experience (no transferable skills), and RFC, there were no jobs existing in significant numbers in the national economy that he could perform, Findings 8-11, *id*. at 29; that, if he stopped substance use, he would have the RFC to perform a full range of work at all exertional levels but would be limited to the performance of simple tasks and could not interact with the public, Finding 14, *id*. at 32; that, if he stopped substance use, considering his age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 15-18, *id*. at 37; and that his substance use disorder, therefore, was a contributing factor material to the determination of disability, as a result of which he had not been disabled at any time from his alleged onset date of disability, February 4, 2017, through the date

---

[2] To be entitled to a CDB award on the earnings record of a wage earner, a claimant who is over 18 and not a full-time student must demonstrate that he or she was disabled before he or she turned 22 "and was continuously disabled from the date of [his or] her twenty-second birthday through the date that [he or] she applied for benefits." *Starcevic v. Comm'r of Soc. Sec.,* No. 08-13128, 2009 WL 2222631, at *6 (E D. Mich. July 22, 2009). *See also* 20 C.F.R. § 404.350.

of the decision, February 13, 2019, Finding 19, *id*. at 38-39.  The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

## I.   Discussion

### A.  Challenge to Finding of Mental RFC Absent Substance Use

The plaintiff first contends that the ALJ exceeded the bounds of his competence as a layperson by construing raw medical evidence to determine his mental RFC absent substance use, rather than relying on an expert RFC assessment.  *See* Statement of Errors at 5-9 (citing, *inter alia*, *Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527, at *2 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010)).  As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 3-5, in so arguing, the plaintiff overlooks the context in which the assessment was made – the determination of the materiality of substance use pursuant to Social Security Ruling 13-2p (SSR 13-2p).

SSR 13-2p provides, in relevant part:

To support a finding that DAA [drug addiction and alcoholism] is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA.  Unlike cases

> involving physical impairments, *we do not permit adjudicators to rely exclusively on medical expertise* and the nature of a claimant's mental disorder.

SSR 13-2p(7)(b), 2013 WL 621536, at *9 (Feb. 20, 2013) (emphasis added); *see also* SSR 13-2p(6)(c)(ii) n.19,  2013 WL 621536, at *8, 16 ("In cases involving physical impairments, we may ask for medical opinions that project the nature, severity, and functional effects if the claimant were to stop using drugs or alcohol.  In cases involving mental impairment(s) we will not ask for projections, as we explain in Question 7."); *Hamlin v. Colvin*, 199 F. Supp. 3d 247, 268 (D. Mass. 2016), *aff'd*, No. 16-2216, 2017 WL 4021233 (1st Cir. Sept. 7, 2017) (claimant's assertion "that medical experts, not the ALJ, must make the materiality determination" was "contradicted by clear Social Security policy and caselaw"); *Chanda v. Colvin*, No. 2:15-cv-52-JHR, 2015 WL 6123752, at *10 (D. Me. Oct. 15, 2015) ("Evidence such as that on which the [ALJ] relied in this case – [t]hat the plaintiff's functioning demonstrably improved during even brief abstinences from alcohol or limitation on its use, that both he and his wife acknowledged that he was suicidal only when intoxicated, and that he acknowledged the ill effects of his substance use – has been held sufficient to constitute substantial evidence of the materiality of DAA.").

In this specialized of context of the determination of whether a claimant with a co-occurring mental impairment would remain disabled if substance use were to cease, the ALJ did not err in failing to base the plaintiff's projected mental RFC on an expert RFC assessment.

At oral argument, the plaintiff's counsel did not contest that point but contended that, in considering his client's functional ability in the absence of substance use, the ALJ transgressed SSR 13-2p in rejecting a third-party statement and hearing testimony of Melanie Coldwell and

relying on the plaintiff's February 2017 inpatient hospitalization.  In support of those points, he

cited sections 8(c)(ii), 9(d)(i), and 9(d)(iii) of SSR 13-2p.  I find no reversible error.[3]

The plaintiff was hospitalized from February 6-14, 2017, on referral from crisis services

"secondary to concerns about suicidal ideation."  Record at 398.  He was noted to be at risk based

on alcohol use given that he was "drinking twice per week[,] and he reports a heavy amount."  *Id.*

(internal quotation marks omitted).  He was discharged with a diagnosis of schizophreniform

disorder and a Global Assessment of Functioning (GAF) score of 55-60.[4]  *See id.* at 400.  On

discharge, a mental status examination revealed that, although "some of [the plaintiff's] thoughts

remain[ed] vague" and there was "a slight illogical flavor to his discourse[,]" he interacted readily

---

[3] Counsel for the commissioner objected that the plaintiff had waived these points and two others – that the ALJ failed to establish that there had been diagnoses of alcohol and marijuana abuse or to consider the definition of schizophrenia – by raising them for the first time at oral argument.  *See Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).  The plaintiff's counsel protested that his arguments concerning SSR 13-2p should not be deemed waived because they fell within the bounds of a permissible response to the commissioner's invocation of SSR 13-2p.  It is not clear to me that the plaintiff's counsel raised separate points of error concerning a lack of substance abuse diagnoses or ignorance of the definition of schizophrenia.  However, to the extent that he meant to do so, those two points are waived for insufficient development.  *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citations omitted).  The commissioner counsel's objection to the remaining two arguments is overruled.  The commissioner placed SSR 13-2p in play by relying on it in his opposing brief.

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id.* at 34.  A GAF score in the range of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.* (boldface omitted).  In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores.  *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").  Nonetheless, I assess the supportability of the ALJ's decision based on the evidence available to him.

and was pleasant, there was no indication of mania, hypomania, or a gross psychotic process, and

he was "very much in control of his behaviors." *Id.*

Section 8(c)(ii) of SSR 13-2p provides, in relevant part:

Information from "other" sources can describe a claimant's functioning over time and can also be especially helpful in documenting the severity of DAA because it supplements the medical evidence of record. "Other" source opinions can assist in our determination whether DAA is material to a finding of disability because it can document how . . . well the claimant is performing activities of daily living in the presence of a comorbid impairment. In many cases, evidence from "other" sources may be the most important information in the case record for these documentation issues.

SSR 13-2p(8)(c)(ii), 2013 WL 621536, at *11 (footnote omitted).

Ms. Coldwell, a family friend and surrogate mother who had known the plaintiff his entire

life and lived in the same house as him, *see* Record at 85-86, 328, submitted a third-party statement

dated August 20, 2017, in which she stated that, before the plaintiff's psychosis and schizophrenia,

he "was a young man who enjoyed his job of helping people, spent a lot of time [with] his girlfriend

and friends, drove everywhere[,] had fun, [and] went to college[,]" but that, "[a]fter getting sick"

he "barely leaves the house[,] feels that he has no thoughts in his head anymore[;] that it[']s empty

or he can't form them." *Id.* at 335. She noted that, although she and the plaintiff "used to discuss

the world, adventures, life now he almost has nothing to say, isolates in his room, is afraid to leave

the house, afraid of life, almost never drives, [and] will avoid any activit[ie]s outside of the house

to avoid being around p[eo]ple." *Id.* She concluded that the plaintiff's "level of comfort with the

world" had "decreased to almost not being able to recognize him[.]" *Id.*

At hearing, Ms. Coldwell also testified that the plaintiff was "maybe 25% of the person he

used to be" and that he rarely left the house and suffered from memory problems and thought

blocking. *Id.* at 88-91. She admitted that the plaintiff continued to smoke marijuana and drink

6

alcohol but testified that she and NP Bukher had concluded that the benefits to the plaintiff of smoking marijuana in controlling his anxiety outweighed the risks. *See id*. at 92-93.

The ALJ concluded that Ms. Coldwell's statement and testimony provided "compelling glimpses into the [plaintiff]'s limitations" and "further support[ed] that [he] cannot sustain work when considering the combined effects of his mental impairments and substance use." *Id*. at 28 (citation omitted). However, he deemed them "unpersuasive in evaluating the [plaintiff]'s limitations if he were to stop his substance abuse" because they were "generally inconsistent with the findings of the [plaintiff]'s providers that his conditions [were] stable or improving throughout 2017 and 2018, as well as with the [plaintiff]'s statements that he was doing well and denying symptoms of anxiety." *Id*. at 36 (citations omitted).

At oral argument, the plaintiff's counsel faulted the ALJ for failing to detail Ms. Coldwell's testimony and, specifically, for overlooking her testimony that she and NP Bukher had concluded that the plaintiff's marijuana use benefited his anxiety. I find no reversible error. The ALJ acknowledged Ms. Coldwell's statements and explained that he found them persuasive in describing the plaintiff's functional capacity with substance abuse but not absent substance abuse. *See id.* at 28, 36. No more was required by SSR 13-2p. While the ruling notes that such evidence "may be the most important information in the case record" in documenting a claimant's functioning in the presence of a comorbid impairment, it does not direct that any particular weight be given to such testimony. SSR 13-2p(8)(c)(ii), 2013 WL 621536, at *11.

Moreover, while the ALJ did not discuss Ms. Coldwell's testimony that she and NP Bukher concluded that the benefits of marijuana outweighed the risks to the plaintiff, he pointed to "very clear recommendations from treatment providers" – including NP Bukher – "that [the plaintiff's] continued alcohol and cannabis abuse was counter-therapeutic and likely worsening his

symptoms." Record at 34. Even if NP Bukher concurred that the benefits of cannabis outweighed the risks to the plaintiff, that did not undermine his stated concerns about its risks.

At oral argument, the plaintiff's counsel further contended that his client's single hospitalization did not establish that DAA was material to his disability and did not constitute a period of abstinence pursuant to SSR 13-2p. He distinguished this case from *Chanda*, in which this court held that an ALJ supportably deemed DAA material to a claimant's disability when, *inter alia*, the avoidance of alcohol during a claimant's inpatient admission had clearly abated his symptoms.

Section 9(d)(i) of SSR 13-2p provides:

Improvement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use. We may find that DAA is not material depending on the extent to which the treatment for the co-occurring mental disorder improves the claimant's signs and symptoms. If the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), we will find that DAA is not material[.]

SSR 13-2p(9)(d)(i), 2013 WL 621536, at *12.

Section 9(d)(iii) states:

[A] single hospitalization or other inpatient intervention is not sufficient to establish that DAA is material when there is evidence that a claimant has a disabling co-occurring mental disorder(s). We need evidence from outside of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, with abstinence.

SSR 13-2p(9)(d)(iii), 2013 WL 621536, at *13 (footnote omitted).

The ALJ did not rely on the plaintiff's single hospitalization in deeming DAA material to his disability. He noted that during the months prior to the plaintiff's alleged onset date of disability, when he reported "only occasional marijuana and alcohol use[,]" he "was stable and doing well, and was working and enrolled in college." Record at 33 (citations omitted). He added

that, (i) in December 2016 and January 2017, the plaintiff "reported increasing marijuana use of up to four joints per day, along with increased alcohol intake of up to six beers per sitting[,]" and (ii) NP Bukher questioned whether "a 'mini mental break'" that the plaintiff experienced during a therapy session was due to cannabis use.  *Id*.  He noted that, in January 2017, the plaintiff and NP Bukher discussed his increased cannabis use, and the plaintiff "acknowledged that he could not smoke cannabis and be able to remain in college."  *Id*. (citations omitted).

The ALJ further observed that, on the day of the plaintiff's inpatient hospitalization, he had consumed alcohol, his toxicology screen was positive for THC, and providers noted that he had not taken his medication in two months.  *See id*.  The plaintiff abstained from marijuana and alcohol during his hospitalization and was noted to be "'very much in control of his behaviors,'" with a GAF score of 55-60, on discharge.  *Id*. (quoting *id*. at 400).

The ALJ added that, despite the plaintiff's allegations of "significant limitations stemming from his anxiety and schizophrenia, . . . he has also repeatedly denied delusions, psychotic symptoms, paranoia, and stated that his anxiety and schizophrenia symptoms are 'well controlled.'"  *Id*. at 35 (citations omitted).

The plaintiff did not challenge any of these findings in his statement of errors, *see* Statement of Errors at 5-9, or at oral argument.  The ALJ's consideration of the plaintiff's inpatient hospitalization, in the context of his consideration of the longitudinal evidence of record, did not transgress the requirements of section 9 of SSR 13-2p.

For the same reason, the plaintiff's attempt to distinguish this case from *Chanda* fails.  Even granting that it is less clear in this case than in *Chanda* that the plaintiff's improvement following inpatient hospitalization was due entirely to his cessation of substance use, here, as in *Chanda*, the ALJ pointed to other evidence in the longitudinal record supporting a conclusion that DAA was

material, most notably, evidence that the plaintiff was capable of working and attending college during a period when his substance use was only occasional and that he acknowledged that he could not smoke cannabis and be able to remain in college. *See* Record at 33-35; *Chanda*, 2015 WL 6123752, at \*10 (ALJ's finding that DAA was material to claimant's disability was supported by longitudinal evidence of record as well as expert's opinion).

Remand, accordingly, is unwarranted on the basis of these points of error.

### B. Challenge to Rejection of Bukher Opinion

The plaintiff next challenges the ALJ's rejection of NP Bukher's opinion. *See* Statement of Errors at 9-13. Again, I find no reversible error. In a letter incorrectly dated March 16, 2014, NP Bukher stated:

> I support [the plaintiff's] disability claim and do not think that he can sustain gainful employment in any capacity. Schizophrenia is a chronic and debilitating illness that often severely impairs even basic daily functioning, treatment notwithstanding. This has unfortunately been [the plaintiff's] experience thus far.

Record at 705. NP Bukher elaborated that he had been treating the plaintiff since 2015, initially for generalized anxiety disorder and attention deficit hyperactivity disorder, "until he had a psychotic break in late 2016" that led to his inpatient hospitalization in early 2017, when he was diagnosed with schizophrenia. *Id.* He noted that, at that time, the plaintiff "was experiencing delusions, paranoia, hallucinations, disorganized thinking and uncharacteristic behavioral disturbances" and "was not able to work and quit shortly before the hospitalization." *Id.* He added:

> Since the psychotic break, and initiating treatment for Schizophrenia, the hallucinations and paranoia have been under fair control. However, he continues to experience severe disturbances of thought, with thought blocking, disorganized thinking, and debilitating negative symptoms, including psychomotor retardation, flattening of affect, depression, anergia and anhedonia. We continue to seek the most optimal treatment options as we adjust his medications and monitor progress through regular visits.

*Id.*

The ALJ found NP Bukher's opinion "somewhat persuasive with respect to the combined effects of the [plaintiff]'s substance use and his mental impairments," although he observed that NP Bukher "repeatedly found that the [plaintiff]'s mental impairments themselves were stable or improving, and that the [plaintiff] repeatedly noted that he was doing well in relation to his mental health." *Id*. at 28 (citations omitted).  He deemed the Bukher opinion "unpersuasive when evaluating [the plaintiff's] mental impairments in the absence of substance use[,]" explaining that (i) "[w]hether the claimant can sustain employment is an issue reserved to the commissioner, and is neither persuasive nor inherently valuable[,]" and (ii) NP Bukher's opinion was "not well supported by his own treatment notes, which contradict[ed]" his assertion that the plaintiff "could not sustain gainful employment in any capacity, as his schizophrenia impaired [his] basic daily functioning despite treatment." *Id*. at 36 (citation omitted).

The ALJ explained that mental status examinations "repeatedly noted the [plaintiff] had no psychomotor agitation, while his thought content was organized and within normal limits, with no loose associations[,]" and NP Bukher's treatment notes "indicate that the [plaintiff] was mostly stable, doing well, and . . . was able to spend time with friends playing video games and basketball." *Id*.  He added that it was "also notable that Nurse Bukher repeatedly found that the [plaintiff]'s schizophrenia and anxiety were improving, or that [he] was experiencing only 'residual negative symptoms' of schizophrenia." *Id*. (citations omitted).

The plaintiff argues that the ALJ misunderstood the import of NP Bukher's findings that he had no psychomotor agitation and was experiencing only residual negative symptoms of schizophrenia and ignored NP Bukher's consistent assessment of GAF scores of 40 from May 4, 2017, through November 9, 2018, indicating major impairment, with the exception of the

assessment of a GAF score of 45 on March 15, 2018, indicating serious impairment. *See* Statement of Errors at 9-13.[5]

Nonetheless, as the commissioner observes, *see* Opposition at 14-15, the plaintiff, who "bears the burden of demonstrating disability throughout the DAA materiality analysis," *Chanda*, 2015 WL 6123752, at *9, does not attempt to show that the treatment notes or GAF scores reflect his functioning in the absence of DAA, even though the treatment notes document daily use of marijuana and occasional ongoing alcohol abuse, *see* Record at 33-34; Statement of Errors at 9-13.[6]

In any event, as the commissioner argues, *see* Opposition at 15-16, the plaintiff does not contest the other reasons supplied by the ALJ for discounting the Bukher opinion – that whether a claimant can work is a finding reserved to the commissioner and that other findings by NP Bukher on mental status examination clashed with his opinion that the plaintiff was disabled, *see* Record at 36; Statement of Errors at 9-13. Thus, even assuming that the ALJ misunderstood the import of some of NP Bukher's findings regarding the plaintiff's schizophrenia and erred in ignoring his assessed GAF scores, the plaintiff fails to demonstrate reversible error in his handling of the NP Bukher opinion. *See, e.g., Baer v. Astrue*, No. 2:11-cv-313-DBH, 2012 WL 3042946, at *6 (D. Me. July 2, 2012) (rec. dec., *aff'd* July 24, 2012) ("Even assuming, *arguendo,* that [treating

---

[5] A GAF score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR at 34 (boldface omitted). A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted).

[6] At oral argument, the plaintiff's counsel asserted that NP Bukher indicated on only two occasions, in June and July 2018, that the plaintiff's schizophrenia may have been influenced by substance abuse. *See* Record at 733, 737 (noting, in assessing schizophrenia, "residual negative symptoms vs. cannabis induced apathy"). As counsel for the commissioner rejoined, NP Bukher also noted that the plaintiff's substance abuse was likely worsening his symptoms. *See id.* at 613, 634. In any event, that NP Bukher noted twice that the plaintiff's schizophrenia may have been influenced by his substance use reasonably can be viewed as supporting the ALJ's finding that DAA was material on the totality of the evidence.

physician's] opinion could not supportably be rejected solely on the bases that it was retrospective and that [he] did not treat the [claimant] during the relevant period, the [ALJ] supplied other good and sufficient reasons for declining to adopt either that opinion, or other treating source opinions.").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*


Dated this 14th day of December, 2020.


/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge